# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 69031-1-I |
| | ) | |
| SHELLEY GOLARD MIDKIFF, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | UNPUBLISHED OPINION |
| | ) | |
| and | ) | |
| | ) | |
| STEVEN LINVEL MIDKIFF, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 21, 2014 |
| | ) | |

APPELWICK, J. — Steven appeals the trial court's division of property when dissolving his marriage to Shelley. Steven challenges the manner in which the court divided the equity in the parties' real estate assets. However, the record fails to demonstrate that the trial court abused its broad discretion. We affirm.

## FACTS

Steven Midkiff and Shelley Midkiff married in June 2008. Less than three years later, in March 2011, the parties separated and Shelley filed a petition for dissolution.[1]

At the time of the marriage, each party owned a residence. Shortly after they married, they decided to sell one residence in order to buy a larger one and to retain the other premarital home as an investment. Based on the parties' assessment of the

---

[1] We refer to the parties by their first names to avoid confusion.

investment potential of the two properties, they decided to sell Shelley's Seattle house and keep Steven's Bothell house. Shelley used $195,000 out of the $201,000 she received in proceeds toward the $650,000 purchase price of a new home.

During the marriage, Shelley was employed as a web specialist at the University of Washington. Steven was self-employed as an audio engineer and ran his own business. The house they purchased together had a large home office, which Steven used to operate his business, and a three car garage, which he also used as a workshop and storage space for equipment used in his business.

While married, the parties kept their finances separate and divided living expenses. Steven's responsibilities included the mortgage and utilities, and Shelley paid for other items, such as food, medical insurance, home maintenance, telephone, and cable. Steven rented his Bothell home to tenants and used the rental income to pay the mortgage and maintenance on that property.

After the couple separated, Steven remained in the marital home and continued to pay the mortgage. The parties agreed that the house should be sold, as neither party could afford to keep it. According to the evidence, at the time of the February 2012 trial, the home had a fair market value of $560,000, and the anticipated proceeds from the sale, after deducting the mortgage and paying all associated costs, were approximately $66,000.

The parties apparently agreed as to the characterization and allocation of all assets and liabilities. Steven conceded that Shelley should receive all of the proceeds from the sale of the parties' home. The only point of disagreement was whether Shelley should receive additional funds to compensate her for her investment of separate funds

2

in the family home. Shelley's position was that even if she were awarded 100 percent of the anticipated proceeds, she would still unfairly bear the burden of the parties' loss on their joint investment.

Steven testified that in 2006 or 2007, the value of his Bothell home was "in the high $300,000's" and that it was appraised in 2010 for $346,000. He estimated that the value at the time of trial was "about" $340,000. The home had a mortgage of approximately $95,000. Steven provided no specific evidence as to the value of the home in 2008 when the parties married.

The trial court considered the short duration of the marriage and the fact that each party entered the marriage with one significant premarital property asset. The trial court determined that a fair and equitable distribution of the property required equal division of the parties' net equity in their two remaining properties. The court observed that distributing only the equity in the marital home would leave the parties in disparate positions. In that scenario, Steven would retain approximately $240,000 in equity on his premarital home. He would also have had use of the marital home for his business and personal purposes and would have "benefitted unduly from the parties' joint decision to sell Wife's home and keep Husband's home for the benefit of the community."

Accordingly, the court awarded to Shelley $66,300, the anticipated proceeds from the sale of the home. The court also ordered Steven to make a transfer payment of $81,200, secured by a lien on his separate real property. Thus, based on total net equity of approximately $300,000 in the two properties, the court awarded Shelley a total of $147,500.

## DISCUSSION

Steven challenges the trial court's division of property. In a dissolution action, the trial court must order a "just and equitable" distribution of the parties' assets and liabilities, whether community or separate. RCW 26.09.080. All property is before the court for distribution. Farmer v. Farmer, 172 Wn.2d 616, 625, 259 P.3d 256 (2011). In reaching a just and equitable property division, the trial court must consider: (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the property division is to become effective. RCW 26.09.080; In re Marriage of Rockwell, 141 Wn. App. 235, 242-43, 170 P.3d 572 (2007). These factors are not exclusive. RCW 26.09.080.

We will seldom modify a trial court's division of property and assets on appeal, and the party who challenges such a decision bears a heavy burden to show a manifest abuse of discretion on the part of the trial court. In re Marriage of Muhammad, 153 Wn.2d 795, 808, 108 P.3d 779 (2005) (Sanders, J., dissenting). A trial court abuses its discretion if its decision is outside the range of acceptable choices or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

A just and equitable division "does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties." In re Marriage of Crosetto, 82 Wn. App. 545, 556, 918 P.2d 954 (1996). A just and equitable distribution of property does not necessarily require an equal distribution and under appropriate circumstances, a court may award the separate property of one party to the other. In re Marriage of DewBerry, 115 Wn. App. 351, 366, 62 P.3d 525 (2003); In re Marriage of White, 105 Wn. App. 545, 549, 20 P.3d 481 (2001).

Steven contends that trial court's decision to order a transfer payment, in addition to the equity in the marital home, renders the property division inequitable. However, we do not review the trial court's distribution of specific assets in a vacuum. It is the overall division of property that must be just and equitable. And, here, the record before this court does not allow us to review the division of property in its entirety. An expert assessed the value of the parties' joint residence. But, no experts evaluated other significant assets, such as Shelley's pension benefit and Steven's business.[2] Although the parties apparently submitted briefing at trial that presumably included proposed values for all assets, these documents do not appear in the record on appeal. In the absence of reliable evidence in the record as to the value of all the parties' assets, we are unable to evaluate Steven's claim that the trial court's division of real property

---

[2] With respect to Shelley's pension, there was evidence only of Shelley's estimated monthly benefit amount if she retired in 2019, not its present value. With respect to Steven's business, Steven estimated in discovery responses that the value was $250,000 based on equipment owned by the business. Apparently, no appraisal was made.

rendered the overall distribution unjust and inequitable. As a result, Steven cannot carry his burden to show the trial court abused its discretion.

Except, as to this one question, the parties appear to assume that the allocation of other assets and liabilities places the parties in the relative financial positions they were in prior to marriage. Steven argues that Shelley is adequately compensated for her $195,000 down payment by receiving the $66,300 net proceeds from the sale of the house. However, this argument shifts all the loss from the purchase and sale of the community residence to her separate assets. His separate real estate equity would be untouched. This does not restore the parties to their respective premarriage positions. The court did not abuse its discretion in determining that a compensating transfer payment was appropriate nor in making that payment a lien on Steven's separate property. The trial court's disposition of property reflects its intent to ensure that the parties equitably shared in the loss on their joint investment.

With respect to the premarital conditions, the evidence clearly established that Shelley realized more than $200,000 in net equity when she sold her Seattle home in 2008. Adding the equity lost to the costs of sale is a proper consideration, and increases that figure by 9 to 10 percent of the sale price. Although Steven's testimony suggested that he may have had more equity in his premarital home at that time, he presented no concrete evidence to establish the amount. The evidence of value of his equity ranged from $240,000 to nearly $300,000. Based on the limited evidence before the court, the nearly 50-50 division of the surviving equity interests is within the scope of the evidence presented and furthers the court's stated purpose of reinstating the premarital financial circumstances.

Based on the record before this court, the trial court's order reflects its consideration of all the parties' property, the duration of the marriage, and the economic circumstances. We find no abuse of discretion.

Citing RCW 26.09.140 and RAP 18.1, Shelley requests attorney fees on appeal. Having considered the merits of Steven's appeal and the financial resources of both parties, we exercise our discretion and decline to award attorney fees.

Affirmed.

_Appelwick, J._

WE CONCUR:

_Dwyer, J._

_Becker, J._